IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEAF FUNDING, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 07 C 4571 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| PMI SPORTS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before this Court is Defendants' motion to dismiss pursuant to Rule 12(b)(7) and Plaintiff's motion for summary judgment.

**I. FACTS**

Plaintiff LEAF is a Delaware corporation with its principal place of business in Wilmington, Delaware, and is fully authorized to do business in the State of Illinois. Defendant PMI is an Illinois Corporation with its principal place of business located in Wauconda, Illinois. Defendants Michael P. Balaskovits and Darryl Osikowicz are citizens of Illinois.

On or about September 19, 2002, Agfa Corporation ("Agfa") as lessor and PMI as lessee executed a Lease Agreement (the "First Lease") with respect to certain equipment under which

PMI agreed to make 60 monthly payments of $2,084.00. On or about September 20, 2002, Agfa as lessor and PMI as lessee executed a Lease Agreement (the "Second Lease")(collectively with the First Lease, the "Leases") with respect to certain equipment under which PMI agreed to make 60 monthly payments of $1,768.17. Under the Leases, upon default, PMI was to pay all past due and all remaining payments due plus interest at the rate of 18%, return the Equipment, and pay all reasonable collection costs and attorneys' fees.

> The Leases contain the following provisions:
>
> Assignment...Lessor may assign or transfer this agreement and lessee waives notice of any such assignment. Lessee hereby waives any and all claims, setoffs, and defenses whatsoever against Lessor's assignee.
>
> Use, Maintenance and Repair...Lessee, at its own expense, shall (a) maintain the equipment in good and safe operating order, repair and conditions, and (b) pay for all fuel, service, inspections, overhauls, replacements, substitutions, materials and labor necessary therefore.
>
> Warranties. Lessee leases the equipment "as is." Lessor makes no warranty or representation, either express or implied, as to design or condition of, or as to the quality of, the equipment, its materials or its workmanship. Lessor makes no warranty of merchantability or fitness of the equipment for any particular purpose or as to its title to the equipment or any component thereof, or as to any other matter. Lessee agrees that all such risks as between lessor and lessee, are to be born by lessee, and the benefits of any and all implied warranties of lessor are hereby waived...No representation as to the equipment or any other matter by the vendor shall in any way affect lessee's duty to perform its obligations as set forth in this agreement, schedules, or other related documents...Lessor is not responsible for any repairs, service or defects in equipment operation thereof.
>
> *Miscellaneous*...This Agreement shall in all respects be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts.
>
> Entire Agreement: This Agreement consists of the face and additional pages and correctly sets forth the entire agreement between lessor and lessee with respect to the use, possession and lease of the equipment. Lessee acknowledges that he/she has read this agreement, understands it and agrees to be bound by its terms and conditions. Neither party shall be bound by any statement not contained in this agreement.

To secure payment of indebtedness under the First Lease, on or about September 4, 2002, Balaskovits executed a Personal Guaranty. To further secure payment of the indebtedness under the First Lease, on or about September 4, 2002, Osikowicz executed a Personal Guaranty. On September 20, 2002, Balaskovits and Osikowicz also executed Personal Guarantees of PMI's obligations under the Second Lease.

Agfa represented that a renewable Service Agreement was mandatory for the Leases. On or about August 23, 2002, PMI entered into a Consumer Imagining Professional Photo Finishing Retail Sales Contract (the "Supply Agreement") with Agfa, by which Agfa would sell certain supplies for the leased equipment to PMI. This agreement contained an integration clause stating that the "Agreement constitutes the complete and exclusive statement of agreement between the parties." On or about February 9, 2004, Agfa's President Bing Liem wrote a letter to Darryl Osikowicz, President of PMI, stating that Agfa would "continue to provide spare parts and technical service to your PPL's through 2008." PPL is a photo-editing and printing system provided under the Leases. On or about October 14, 2004, PMI and Agfa entered into a one-year Service Support Program (the "Service Agreement") effective October 1, 2004 to September 30, 2005.

On or about October 31, 2004, Agfa and AgfaPhoto USA Corporation ("AgfaPhoto") executed a Local Asset Sale and Transfer Agreement (the "Transfer Agreement") pursuant to which Agfa transferred to AgfaPhoto certain of its assets, including the Leases with PMI.

On November 30, 2005, AgfaPhoto and LEAF executed a Purchase Agreement (the "Purchase Agreement") pursuant to which AgfaPhoto sold and assigned to LEAF its rights as to certain Leases, including PMI's. Under the Purchase Agreement, "Seller, in consideration of the

payment by LEAF of the Purchase Price...irrevocably sells, assigns and transfers to LEAF, its successors and assigns the Purchased Assets. Seller hereby agrees that Seller shall not be relieved of, and LEAF does not assume, any of Seller's obligations under the Purchased Leases or with respect to the Equipment." Purchase Agreement, Section 2.2(a). Further, "the Purchased Leases are assignable by Seller to LEAF...[and] Seller shall fulfill and perform all of its obligations, covenants, liabilities, warranties, and duties, if any under each Purchased Lease and/or any other agreements or instruments executed by it with respect to the delivery, maintenance, servicing and updating of the Equipment covered by the Purchased Lease." Purchase Agreement, Section 4.2(a).

Until October 2005, Agfa and AgfaPhoto provided reliable services and replacement parts to PMI. On or about October 10, 2005, AgfaPhoto sent a letter to PMI stating that PMI would no longer receive service or replacement parts. In or about early October 2005, the PPL system failed because it was wrinkling paper. PMI called for services, and learned that Agfa would not provide any service or replacement parts. PMI ceased making the lease payments to LEAF. LEAF asserts that PMI stopped making payments on December 24, 2005.

On February 14, 2006, LEAF filed a complaint against PMI, Balaskovits and Osikowicz in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois. LEAF's Complaint alleged that PMI breached the Leases. On August 8, 2006, LEAF filed a Second Amended Complaint naming AgfaPhoto as an additional defendant, asserting an indemnification claim against AgfaPhoto. In the state court action, AgfaPhoto asserted a crossclaim against PMI, seeking recovery for breach of contract and quantum meruit theories for sums due AgfaPhoto under the Supply Agreement and Service Agreement contracts. On February 20, 2007, the state

court granted LEAF's motion to voluntarily dismiss AgfaPhoto. On August 1, 2007, LEAF voluntarily dismissed its claims against the PMI Defendants in state court, and on August 14, 2007, LEAF filed the instant suit in this court. AgfaPhoto's crossclaim against PMI remains in state court. PMI asserts that it also has a crossclaim in state court, but does not elaborate. PMI moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19, and LEAF moves for summary judgment.

**II. LEGAL STANDARD**

A. Rule 12(b)(7) and 19

Under Rule 12(b)(7), a case may be dismissed for failure to join a party under Rule 19. According to Federal Rule 19, determining whether dismissal is appropriate for failure to include a particular party requires a two-step analysis, where dismissal is only warranted if the allegedly missing party is both "necessary" under 19(a) and "indispensable" under 19(b). At the outset, it should be noted that the ultimate purpose of this rule is to "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Davis Companies v. Emerald Casino, Inc*., 268 F.3d 477, 481 (7th Cir. 2001).

A "necessary" party is one that is "to be joined if feasible." *Davis,* 268 F.3d at 481. Rule 19(a) provides that a party is to be joined if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Fed. R. Civ. P. 19(a).

If the individual or entity is deemed "necessary" according to these criteria, the court must then determine whether "in equity and good conscience the action should not proceed among the parties before the court -- that is, should not proceed in the necessary party's absence -- but rather should be dismissed." Id. at 877 (quoting Fed. R. Civ. P. 19(b)). This question has been commonly referred to as a question of whether the necessary party is "indispensable." *See Darush v. Northern Trust Co.*, 1996 U.S. Dist. LEXIS 2369, 1996 WL 99903 (N.D. Ill. Feb. 29, 1996) (citing *Pasco International (London), Ltd. v. Stenograph Corp.*, 637 F.2d 496, 505 n. 13 (7th Cir.1980); *Krueger v. Cartwright*, 996 F.2d 928, 933 (7th Cir.1993)). Rule 19(b) sets forth four factors to consider in deciding whether an absent party is "indispensable": (1) the extent to which a judgment entered without the absent party might be prejudicial to him or those already parties; (2) the extent to which protective measures might be employed to lessen or avoid the prejudice; (3) whether a judgment rendered in the absence of the party will be adequate; and, (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. Fed. R. Civ. P. 19(b).

B. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a

reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

**III. LEGAL ANALYSIS**

A. Motion to Dismiss

Defendants move to dismiss on the ground that AgfaPhoto is a necessary and indispensable party under Rule 19, and thus, failure to join warrants dismissal under Rule 12(b)(7), as joinder would destroy complete diversity. The question before this court is whether AgfaPhoto is a necessary and indispensable party to this suit.

Under Rule 19(a)(1), "complete relief" refers only to claims between the parties to the present litigation, not to relief between a party and an absent person. *Davis Cos. V. Emerald Casino, Inc*., 268 F.3d 477, 484 (7th Cir. 2001). Defendants argue that complete relief between PMI and LEAF is impossible without involving AgfaPhoto in the litigation. They contend that the duties and obligations under the Leases assigned by AgfaPhoto to LEAF cannot be understood apart from the Service agreement between Agfa and PMI, which obligated Agfa to provide service and supplies for the equipment leased. Defendants rely on *Leasecomm Corp. V. Crockett* too support their contention that different agreements can be considered "one,

integrated agreement." 1998 Mass.App.Div.6, 1998 WL 15935, 3. *Leasecomm Corp*, however, offers little support for PMI's argument. It indicates that factors to be considered in deciding whether documents should be read together include simultaneity of signing and references made in one document to another. *Id.* at 4. In the present case, the agreements were signed on different dates and do not cross-reference one another. The lease agreements were signed on September 19, 2002 and September 20, 2002. The Supply Agreement was signed on August 23, 2002, and the Service Agreement was not signed until October 14, 2004. The Leases do not reference the Service Agreement or indicate that the obligation to make payments is contingent on the provision of services. Indeed, they state that the equipment is leased "as is" and that the lessee has the responsibility of maintaining it. Further, the Leases contained integration clauses that deem the Leases complete in themselves. To argue that the Service Agreement or Supply Agreement was integrated with the Leases simply denies the clear language of the contracts. In fact, arguing that AgfaPhoto breached the Leases by failing to provide parts and services would be contradictory to the Warranties section of the integrated Leases. The clear language of the contracts renders the Leases separate and distinct from the Supply Agreement and Service Agreement.

Agfa subsequently assigned the Leases to AgfaPhoto and AgfaPhoto assigned the Leases to LEAF. The language of the Purchase Agreement, assigning the Leases to LEAF is also clear:

> The Purchased Leases are assignable by Seller to LEAF...[and] Seller shall fulfill and perform all of its obligations, covenants, liabilities, warranties, and duties, if any under each Purchased Lease and/or any other agreements or instruments executed by it with respect to the delivery, maintenance, servicing and updating of the Equipment covered by the Purchased Lease.

Purchase Agreement, Section 4.2(a). Under this assignment in the Purchase Agreement, LEAF was assigned the right to collect the payments, and AgfaPhoto retained its obligations, covenants, liabilities, warranties and duties. The issue in this case involves only the Leases, and whether the Leases were breached. The Leases promised that Agfa, and later AgfaPhoto, would provide PMI with the listed equipment. There is no question that PMI was provided the equipment under the Leases, albeit in a allegedly broken state. The questions of service and maintenance were expressly waived by the provision of the Lease, and were contracted under separate agreements. Because this case involves only whether the Leases were breached, and there is no question that AgfaPhoto provided PMI with the equipment "as is," the only remaining question is whether PMI paid LEAF the promised amount. Complete relief between PMI and LEAF may be accorded without making AgfaPhoto a party.

Under Rule 19(a)(2)(I), AgfaPhoto has not claimed an interest related to the lease agreement. When an outsider is aware of an action and does not claim an interest, courts typically do not second-guess the decision. *Davis*, 268 F.3d at 483-84. Moreover, it is unlikely that AgfaPhoto could claim such an interest. AgfaPhoto assigned its rights to lease payments to Leaf and cannot sue to enforce the payments. It therefore has no claim related to the Leases. AgfaPhoto may have a claim to payment under the Service Agreement that is currently pending in state court. However, where separate contracts create separate obligations, a decision in one case does not bind the absent parties in future cases. *Evergreen Park Nursing & Convalescent Home, Inc. v. Am. Equitable Assurance Co.*, 417 F.2d 1113, 1115 (7th Cir.1969). Thus, AgfaPhoto's ability to protect its interests will not be affected by the present case.

Finally, failing to join AgfaPhoto would not leave PMI at risk of multiple or inconsistent obligations under Rule 19(a)(ii). Such a risk has been found when, for example, different courts might require an employer to give the same jobs to two different unions, or when courts might reach conflicting conclusions about property ownership. *Teamster Loc. Union No. 714 v. GES Exposition Servs., Inc.*, 494 F.Supp.2d 970, 974 (N.D. Ill. 2007); *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1448 (7th Cir.1990). In this case, PMI's obligations to LEAF under the Leases are distinct from its obligations to Agfa or AgfaPhoto under the Service Agreement. There is no risk of inconsistent obligations because any holding by this court regarding PMI's liability to LEAF would have no implications for PMI's liability to AgfaPhoto. The mere possibility of future litigation with an outside party does not make joinder of that party necessary. *Pasco,* 637 F.2d at 505. In any case, disputes between PMI and AgfaPhoto over the Service Agreement would more properly be settled between PMI and AgfaPhoto rather than in the context of this litigation.

For the foregoing reasons, AgfaPhoto is not a party that must be joined under Rule 19(a). Because AgfaPhoto is not a necessary party under Rule 19(a), there is no need to consider whether it is an indispensable party under Rule 19(b). Defendants' motion to dismiss pursuant to Rule 12(b)(7) is denied.

B. Summary Judgment

LEAF moves for summary judgment on the ground that there is no genuine issue of material fact that the Leases were breached by PMI. PMI argues that there are genuine issues of material facts on four grounds: (1) inconsistencies in the documents related to Agfa's obligation to provide service for the leased equipment create an issue of fact as to whether PMI is in default

of any alleged obligation to make continuing lease payments; (2) there is an issue of fact as to whether Agfa's President, Bing Liem, modified the Leases by a subsequent letter creating a service obligation chargeable to Leaf; (3) LEAF fails to offer any admissible evidence establishing that LEAF purchased an interest in the subject leases; and (4) the evidence offered in support of LEAF's motion fails to establish a sufficient foundation for the damages claimed.

PMI argues that there is a genuine issue of material fact as to whether the Leases were part of a larger over-arching agreement, including the Service and Supply Agreements, or whether the Leases were separately enforceable contracts. As discussed above, although the contracts all concern the leased equipment, the Leases and Service and Supply Agreements constitute separate contracts, signed at different times with no reference to each other. To suggest that these contracts were part of a legally integrated whole would deny the clear language in each. For example, under the Leases, Agfa specifically waived any warranty on the equipment, stating: "No representation as to the equipment or any other matter by the vendor shall in any way affect lessee's duty to perform its obligations as set forth in this agreement, schedules, or other related documents...Lessor is not responsible for any repairs, service or defects in equipment operation thereof." To then argue that under the same integrated agreement, Agfa also agreed to be responsible for certain services and repairs would be contradictory to the language in the Leases. A more reasonable interpretation is that under the lease agreements, Agfa (and later AgfaPhoto and LEAF) are not held liable for the services and repairs. Under the separate Service and Supply Agreements, Agfa did have obligations to provide services, repairs and products. There is no genuine issue of material fact that the Leases are separate documents, in which PMI had obligation to pay LEAF for the leased equipment "as is."

PMI argues that Agfa's President Bing Liem modified the Leases by a subsequent letter creating a service obligation chargeable to LEAF. This is inconsistent with the Purchase Agreement, which specifically stated, "Seller shall fulfill and perform all of its obligations, covenants, liabilities, warranties, and duties, if any under each Purchased Lease and/or any other agreements or instruments executed by it with respect to the delivery, maintenance, servicing and updating of the Equipment covered by the Purchased Lease." While, Liem's statement may have implications for Agfa or AgfaPhoto, it does not affect the liabilities and obligations of LEAF.

PMI argues that LEAF fails to offer any admissible evidence establishing that LEAF purchased an interest in the subject leases. LEAF relies on the Affidavit of David English, President of LEAF, to corroborate its assertion that Agfa transferred its interest in the leases to AgfaPhoto. English performed due diligence prior to LEAF's purchase of the Leases from AgfaPhoto, and found the Local Asset Sale and Transfer Agreement (the "Transfer Agreement") pursuant to which Agfa transferred to AgfaPhoto certain of its assets, including the Leases, on or about October 31, 2004. PMI argues that English did not have personal knowledge of the transfer, and thus English could not authenticate the Transfer Agreement to show that Agfa indeed did transfer the Leases to AgfaPhoto. LEAF provides a copy of the Transfer Agreement, signed by Vice President and CFO of Agfa, Tim Coakley, the transferor, and President of AgfaPhoto, Bing Liem, the transferee. Generally, "the proponent of a proffered exhibit needs only to make a prima facie showing that the exhibit is what the proponent claims it to be." Weinstein's Federal Evidence Section 901.02[3]. PMI has presented no reason for this court to question the authenticity and trustworthiness of the Transfer Agreement or the signatures therein.

There is no evidence that Agfa has tried to collect Lease payments from PMI after the Transfer Agreement. Given English's position as President of LEAF, his performance of due diligence prior to LEAF's purchase of the Leases, and the fact that there have been no competing payment collections on the Leases, this court is satisfied that the copy of the Transfer Agreement provided by LEAF meets the prima facie authentication requirement.

    PMI argues that there is a genuine issue of material fact as to damages amount. LEAF, through the affidavit of James J. Grant, President of LEAF, states that based on the terms of the Leases, PMI owes LEAF $67,654.64 under the First Lease, plus interest at rate of 18% per annum from and after December 24, 2005, reasonable attorneys' fees and costs; and PMI owes LEAF $35,523.52 under the Second Lease, plus interest at rate of 18% per annum from and after December 24, 2005, reasonable attorneys' fees and costs. In addition, Balaskovits and Osikowicz, as guarantors, owe LEAF the same amounts under both Leases. Aside from these assertions, there are no explanations or calculation on how these figures were derived from the lease balances. Further, the parties agree that under the CAP Program agreement, Agfa would take a portion of the purchase price for supplies paid by PMI and apply that amount to the lease payments. PMI asserts that this amount was not taken into account by LEAF while computing the damages. From the evidence presented, it is unclear to what extent the CAP Program would affect the amounts owed by PMI to LEAF. There remains a genuine issue of material fact as to the proper amount of damages owed to LEAF by PMI under the Leases. As such, summary judgment is denied on the sole issue of damages. Pursuant to Rule 56(d), the issue of liability is determined in favor of LEAF as to its claim of breach by PMI and the only unresolved issues relate to damages, beginning on December 24, 2005.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss pursuant to Rule 12(b)(7) is denied; there are no material facts in controversy as to liability, and liability of PMI on LEAF's claim of breach is deemed established, as is the date of breach, December 24, 2005. The only issues remaining for trial concern the amount of damages and whether pre- and/or post-judgment interest should be awarded.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

**Dated: May 29, 2008**